**Peter CAMPLIN**

v.

**TOWN OF YORK[1].**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1984.

Decided Feb. 22, 1984.

1. We have deleted the York Planning Board as a named defendant in this action. *Levesque v.*

Law Offices of Ralph A. Dyer, Ralph A. Dyer (orally), Carol A. Guckert, Portland, for plaintiff.

Murray, Plumb & Murray, E. Stephen Murray (orally), Ellyn C. Ballou, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN and GLASSMAN, JJ.

VIOLETTE, Justice.

Plaintiff, Peter Camplin, is the buyer under a purchase and sale agreement of a 21.5 acre parcel of land in York, Maine.[2] In this appeal, he seeks review of a grant of summary judgment by the Superior Court, York County, in favor of the Town of York, the effect of which bars plaintiff from developing his tract in a manner consistent with the application and preliminary plan he submitted to the town's planning board for approval. Because we find no error in the proceedings below, we affirm the judgment of the Superior Court.

I.

On March 29, 1983, plaintiff sought approval of a preliminary plan for a major residential subdivision named "Autumn Pond" by filing an application and sketch plan with the York Planning Board. According to plaintiff's application, the land is zoned B and B-1. Plaintiff proposes to

*Inhabitants of the Town of Eliot,* 448 A.2d 876 n. 1 (Me.1982).

2. On appeal, defendant challenged plaintiff's standing to bring this action. At oral argument, the parties stipulated to plaintiff's standing under the purchase and sale agreement.

build 37 duplexes for a total of 74 units on the subject property.[3] The parties agree that the per unit land area in plaintiff's proposed subdivision is 12,656 square feet. All units are to be served by public water and sewer.

Under an amendment that became effective on March 13, 1982, to Section VII of York's zoning ordinance, the minimum land area required for each dwelling unit in a B or B–1 zone served by public water and sewer is 20,000 square feet. Prior to March 13, 1982, the minimum land area required for each unit was 10,000 square feet. A grandfather clause protects all "lots of record" in existence at the time of the ordinance amendment. Under the grandfather clause, "[a]ll lots of record existing at the time of ordinance amendment shall be permitted to be developed according to the dimensional requirements which were in effect immediately prior to the amendment." York, Me., Code Section VII (amended March 13, 1982).

On May 19, 1983, the planning board reviewed and rejected plaintiff's application and sketch plan, finding that plaintiff's proposal did not meet the minimum per unit land area requirement established by the amended ordinance. In effect, the board found that the grandfather clause contained in the ordinance did not apply to plaintiff's proposal.[4] Plaintiff sought review of the board's decision by the Superior Court pursuant to M.R.Civ.P. 80B. He claimed, in Count I of his complaint that, as a matter of law, the grandfather clause applied to his proposal and, therefore, his application and sketch plan should be approved. Plaintiff then moved for summary judgment on Count I which was denied to him but granted to defendant.[5] Plaintiff's appeal to this Court followed.

## II.

Under M.R.Civ.P. 56(c), summary judgment may be granted to either the moving or non-moving party only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. In the present appeal, no material fact is in dispute. The only issue is whether the grandfather clause in the amended ordinance applies to plaintiff's subdivision proposal. To answer this question, we are required to determine what is meant by the term "lots of record" as it is used in the grandfather clause.

We have consistently held that "the meaning of terms or expressions in zoning ordinances calls for the construction of legislation and is a question of law for the court." *Singal v. City of Bangor,* 440 A.2d 1048, 1050 (Me.1982), *citing LaPointe v. City of Saco,* 419 A.2d 1013, 1015 (Me.1980); *Moyer v. Board of Zoning Appeals,* 233 A.2d 311, 318 (Me.1967). We must affirm, therefore, the grant of summary judgment unless the presiding justice committed an error of law. M.R.Civ.P. 56(c).

3. Plaintiff's plan, if approved, would not divide the parcel into lots to be sold with the individual housing units. Instead, plaintiff proposes to attach a condominium-type interest in the parcel to purchasers of individual units. Plaintiff, however, concedes that his plan constitutes a "functional subdivision" of the 21.5 acre parcel. We do not consider the nature of plaintiff's subdivision plan to be material to our disposition of the present appeal.

4. If the grandfather clause were applicable to plaintiff's proposal, the plan could not be rejected on the ground that it failed to meet minimum per unit area requirements.

5. Plaintiff also moved for summary judgment on Counts II and III. In Count II, plaintiff claimed violation of his rights under the Equal Protection Clauses of the constitutions of the United States and Maine. U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6–A. In Count III, plaintiff claimed violation of his rights under the Due Process Clauses of the constitutions of the United States and Maine. *Id.* The Superior Court denied summary judgment as to these Counts, finding that there existed genuine issues of material fact. Plaintiff then dismissed Counts II and III for the purpose of obtaining a final judgment to appeal to this Court. M.R. Civ.P. 41(a)(1)(i) and 54(b).

### III.

The term "lots of record" is not defined in York's zoning ordinance. Acknowledging this fact, plaintiff urges us to look outside the zoning ordinance for a definition. He points us to a definition of "lot of record" contained in the Town of York Building Code. According to plaintiff, under the building code, the term "lot of record" means "a lot duly recorded at the office of the York County Registry of Deeds, as of the effective date of this Ordinance." Plaintiff asserts that because the 21.5 acre parcel has been recorded as a single lot of land in the York County Registry of Deeds since 1956, it is a "lot of record" for the purpose of the operation of the grandfather clause. Plaintiff concludes, therefore, that he is permitted to develop the property as proposed in his sketch plan, consistent with preamendment dimensional requirements. Plaintiff's argument, however, is fatally flawed for two reasons.

First, plaintiff's argument is flawed because there exists absolutely nothing in the record before this Court supporting plaintiff's assertion that York's building code either contains a definition of "lot of record" or, if it does, that the definition is incorporated into the town's zoning ordinance. Further, there is no record before this Court supporting his assertion that the 21.5 acre parcel has been recorded in the York County Registry of Deeds prior to the effective date of the amended ordinance. Facts relied upon by any party to prevail under a motion for summary judgment must be established in accordance with Rule 56, M.R.Civ.P.

■ Even assuming, however, that the record before us would permit review under plaintiff's theory, his argument is also flawed because it is not supported by Maine law. Under Maine law, instead of looking outside the ordinance for assistance in ascertaining the meaning of an undefined term, we are required to look to the ordinance itself for guidance. Undefined terms should be given their common and generally accepted meanings unless the context requires otherwise. *LaPointe,* 419 A.2d at 1015; *Robinson v. Board of Appeals of the Town of Kennebunk,* 356 A.2d 196, 198 (Me. 1976); *Moyer,* 233 A.2d at 317. In searching for the meaning of an undefined or ambiguous term, we must consider the objects sought to be obtained by the ordinance as well as the general structure of the ordinance as a whole. *Id.* Absent a showing, therefore, that York's building code is in some way incorporated into its zoning ordinance, it is improper in the present case to look to the building code to provide a definition missing from the zoning ordinance.

### IV.

Plaintiff argues alternatively that the common and generally accepted meaning of the term "lots of record" is any property duly recorded in the York County Registry of Deeds, and that we should so hold for the purpose of determining the effect of the grandfather clause. To accept this argument would, however, lead us to neglect our duty to interpret the meaning of "lots of record" in light of the objective sought to be obtained by the amendment to the ordinance. *LaPointe,* 419 A.2d at 1015; *Robinson,* 356 A.2d at 198; *Moyer,* 233 A.2d at 317.

It is clear that the March 13, 1982 amendment seeks to reduce the density of new residential units, especially duplex and multiple family units. As it pertains to plaintiff's proposal, the amendment increased the minimum per unit land area requirements from 10,000 to 20,000 square feet in B and B-1 zones served by public water and sewer. The amendment also increased minimum street frontage requirements in some zones and established minimum set back requirements for all buildings in all zones. If we were to assign to the term "lots of record" the meaning suggested by plaintiff, we would be ignoring the lower density objective clearly sought by the amendment. We would, in effect, render the amendment meaningless.

Under the reading of the grandfather clause advocated by plaintiff, any developer could circumvent the higher minimum land area requirements as long as he owned or acquired a parcel that was recorded in the York County Registry of Deeds as of the date of the amendment to the ordinance. The only development scheme that would be affected by the higher minimum land area requirements would be one where a developer acquired adjacent parcels (or part of a single parcel) and recorded his new deed or deeds in the registry of deeds after the effective date of the amendment. Clearly, such a reading would not be consistent with the decreased housing density objective of the amendment and must be rejected.

█ We hold, therefore, that the Superior Court did not err in finding that the planning board properly interpreted and applied the zoning ordinance to plaintiff's development proposal. The grandfather clause applies only to those lots recorded in the registry of deeds at the time of the ordinance amendment that do not meet the post-amendment minimum land area requirements. Such lots may be developed under the pre-amendment lot standards as long as the owner does not seek to subdivide the lots either physically, as is the case in traditional subdivision plans, or functionally, as is the case under plaintiff's proposal. If, as here, the owner of a parcel seeks to subdivide it after the date of ordinance amendment, he must comply with the increased minimum land area requirements established by the amendment.

The entry is:

Judgment affirmed.

All concurring.