Peter **MOODY**

v.

**TOWN OF WELLS.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1985.

Decided April 11, 1985.

Bourque, Clegg & Kugler, John R. Kugler (orally), Wells, for plaintiffs.

Ayer, Hodsdon & Austin, Gordon C. Ayer (orally), Kennebunk, for defendants.

Before McKUSICK, ROBERTS, VIOL-ETTE, WATHEN, GLASSMAN and SCOL-NIK, JJ.

ROBERTS, Justice.

Peter Moody appeals from a summary judgment entered in Superior Court, York County, in favor of the Town of Wells upon Moody's complaint for direct judicial review of the decision of the zoning board of appeals.[1] Moody contends, *inter alia,* that the board erred in its interpretation of section II(D)(5) of the Wells Zoning Ordinance (merger of lots in common ownership). Because we agree, we reverse the judgment of the Superior Court.

Prior to the 1976 enactment of the Wells Zoning Ordinance, Peter Moody had constructed eight dwelling units on a 20,000 square foot parcel of land (parcel A) in the Town of Wells. After enactment of the ordinance each dwelling unit required 5,000 square feet of land. Moody's buildings, of course, remained lawful as nonconforming uses under the ordinance's grandfather clause.

In 1981 Moody purchased a parcel adjacent to parcel A of approximately 10,000 square feet (parcel B) for the purpose of constructing a duplex dwelling on that lot. By itself parcel B would suffice under the zoning ordinance to support the planned duplex. At issue in this appeal is the question whether section II(D)(5) of the ordinance requires a merger of parcel B with parcel A because of parcel A's nonconforming nature.

Section II(D)(5) provides in pertinent part:

> If two or more contiguous lots are in the same ownership on or after November 2, 1976 they shall be considered as one lot for the purpose of the minimum lot size provisions of this Ordinance, and no portion of said parcel shall be built upon or sold which does not meet the dimensional requirements of the Wells Zoning Ordinance.

Moody's basic argument is that the proper interpretation of the merger provision is controlled by our decision in *LaPointe v. City of Saco,* 419 A.2d 1013 (Me.1980). The town attempts to distinguish *LaPointe* on the basis that the wording of the Wells ordinance differs from the wording of the Saco ordinance. By focusing upon the textual argument of the plaintiffs in *LaPointe,* 419 A.2d at 1016, the town argues that our decision was based upon the notion that the Saco ordinance necessarily referred only to lots that could be "built upon" or, in other words, unimproved lots. Because the Wells ordinance uses the phrase "built upon or sold," the town claims a different interpretation is in order. We disagree.

We specifically stated in *LaPointe* that the plaintiffs' textual argument might not be conclusive. *Id.* We decided, however, that the city did not intend the limitations upon use of a merged parcel to be applicable to previously improved property. The ordinance provided that no portion of the merged parcel could be *used* without conforming and no *division* of the merged parcel could leave the remainder nonconforming. *Id.* We fail to detect any significant difference in the Wells restrictions that "no portion ... shall be built upon or sold which does not [conform]." For our purposes, the word "division" means the same thing as the word "sold." As interpreted by the town, the Wells ordinance would prevent Moody from ever conveying any of his buildings as a single unit. Clearly, that was not the intent of the ordinance.

We likewise see no significance in the fact that the LaPointes had acquired both parcels *prior* to the effective change in the Saco ordinance whereas, in the case before us, Moody acquired parcel B after the ordinance amendment. For the reasons stated above, the merger provision simply does not compel the merger of improved property with an unimproved parcel in these circumstances. We need not address any oth-

---

1. Moody's son is also a party plaintiff for rea-

sons that do not affect the merits of the case.

er issues raised on appeal or in the plaintiff's complaint and we express no opinion thereon.

The entry is:

Judgment reversed.

Remanded to the Superior Court with directions to enter judgment reversing the decision of the board of zoning appeals.

McKUSICK, C.J., and VIOLETTE, WATHEN, and GLASSMAN, JJ., concurring.

SCOLNIK, Justice, dissenting.

I respectfully dissent because I do not believe that *LaPointe v. City of Saco* controls this case. Barring any undue hardship in the individual case, it is within the scope of the Town's zoning power to require such a merger in order to eliminate or alleviate nonconforming uses. "Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as speedily as justice will permit." *Inhabs. of Town of Windham v. Sprague*, 219 A.2d 548, 552–53 (Me.1966). Maintaining a low population density is a valid object of a zoning ordinance, and interpretation of the language should not be strained to avoid that goal. *Camplin v. Town of York*, 471 A.2d 1035 (Me.1984).

We said in *Sprague* that, "provisions of a zoning regulation for the continuation of [nonconforming] uses should be strictly construed, and provisions limiting nonconforming uses should be liberally construed." 219 A.2d at 552 (quoting from 101 C.J.S. *Zoning*, § 182). Reading the Wells ordinance with that in mind, I think that it means what counsel for the Town argues that it means. Thus, the Court's reliance on the differing language of the Saco ordinance at issue in *LaPointe* is misplaced.

In *LaPointe* we held that the Saco zoning ordinance only required a merger where both lots were unimproved, and did not require the merger of an improved with an unimproved lot. That holding was based on our interpretation of the language of the ordinance. It contained three relevant paragraphs, reproduced at 419 A.2d 1014. The first and second contain the "grandfather" provision: a lot whose nonconformity preexisted the ordinance "may be built on." This, we recognized, was some indication that only unimproved lots were included in the later merger provision, since an improved lot could not be further built upon. Looking only at the first and second paragraphs was, however, not "conclusive." *Id.* at 1016. We then looked at the third paragraph of the Saco ordinance: the merger provision. There we found confirmation in the language of the ordinance that only unimproved lots were merged under its provisions. The actions prohibited after merger, "using" a parcel and "dividing" it in such a way as to leave any portion smaller than buildable size, could only apply to unimproved lots. Thus we determined that the intent of the drafters was not to merge lots that had previously been improved separately, nor (given the facts of the case) to merge an unimproved lot with one that had previously been improved.

We buttressed our textual analysis with the hint that a prohibition on separate conveyance of previously improved lots "might be unenforceable." For that suggestion we relied on a New Jersey case, *Burke v. Bd. of Adjustment of Borough of Spring Lake*, 52 N.J.Super. 498, 145 A.2d 790 (1958). *Burke* affirmed the trial court's grant of a variance to a property owner on two grounds. Like the LaPointes, the owner had owned *both* adjoining parcels for eleven years before the ordinance took effect, and had built upon one. The second became nonconforming under the new ordinance, and her application for a variance was denied. The court reversed, because she had bought the lots years before the ordinance with the expectation of building on both. This was the "estoppel-like concept" to which we referred in *LaPointe*. 419 A.2d at 1016. It was based on the

deprivation of the economic value of the property by a later-enacted ordinance that created an "undue hardship." As is true of all "estoppel-like concepts" it was applicable on the facts of the individual case. However, in the present case there was no deprivation of any existing property right or reasonable expectancy thereof, since Moody bought the second parcel five years after the ordinance took effect, and is deemed to have had knowledge of it. *Sibley v. Inhabs. of Town of Wells*, 462 A.2d 27, 31 (Me.1983). Thus the second basis for the *LaPointe* holding is inapplicable here.

Having said that, I turn to the language of the Wells ordinance. Read in its entirety, it resists being given the meaning we ascribed to the Saco ordinance in *LaPointe*. The clause under which the Wells Board barred Moody's sale refers to lots that can be "built on or sold." [1] I agree with the Court that "division" and "sale" are functional equivalents. That, by itself, does not limit the Wells ordinance, as the Saco ordinance was limited, to prohibiting only the division of two unimproved lots since improved lots, too, can be sold. As we did in *LaPointe*, we must look further.

The first clause of section II.D(5) merges contiguous lots held by the same owner after November 2, 1976. Moody bought his first lot in 1962 and his second in 1981. By the express language of that first clause, the lots merged for zoning purposes upon the purchase of the second. The ordinance's "grandfather" clause, section III(1), permits nonconforming uses to continue subject to the further provisions of that section. Section III(3) goes on to provide, "[w]herever a nonconforming use is changed to a permitted use, such use shall not thereafter revert to nonconforming status notwithstanding any other provisions of this ordinance." This further implements the Town's power to alleviate nonconforming uses. Though the most literal reading of this provision would find it inapplicable here, where, even with the merger, the parcel has not reached complete conformity, we are required to construe provisions limiting nonconforming uses liberally. Section III(3) expresses the drafters' intent not to permit the loss of gains achieved in the direction of complete conformity.

Section II.D(1) prevents any premises *or* building from being used unless in conformity with the ordinance.[2] If that section prohibited only the use of nonconforming *premises*, we might still be able to say that, like the *LaPointe* ordinance which did just that, the merger provision of section II.D(5) covers only unimproved lots. But section II.D(1) expressly covers *improvements* as well. Thus Moody cannot divide his property so as to leave a nonconforming use.[3]

We are required to read the ordinance as a whole, construing its terms reasonably with regard to the objects it seeks to attain. *Robinson v. Bd. of Appeals of Town of Kennebunk*, 356 A.2d 196, 198 (Me. 1976). We must take all the aforementioned sections into consideration, along with its express purpose to "prevent overcrowding of real estate" (section II.A). It is thus apparent that section II.D(5) requires the merger of an improved with an unimproved lot, and bars their subsequent

---

**1.** Section II.D(5) provides,
    If two or more contiguous lots are in the same ownership on or after November 2, 1976 they shall be considered as one lot for the purpose of the minimum lot size provisions of this Ordinance, and no portion of said parcel shall be built upon or sold which does not meet the dimensional requirements of the Wells Zoning Ordinance.

**2.** Section II.D(1) provides,
    No building, or structure shall be erected, altered, enlarged, rebuilt, moved or used and

no premises shall be used unless in conformity with the provisions of this Ordinance except those existing which by the provisions of this Ordinance become legally non-conforming.

**3.** Though Moody's first lot was initially grandfathered as a legal nonconforming use, it may not return to that state once it has merged with the second lot. Section III(3) prevents any such backsliding.

division in order to prevent regression from gains made in the direction of conformity. On its face, therefore, the Wells ordinance achieves what the Saco ordinance in *LaPointe* did not.

Although the Court correctly observes that, interpreted as the Town wishes, the language of the ordinance would also prohibit selling any one of the individual preexisting *buildings* on Moody's first lot, we need not decide *in this case* whether or not such a prohibition would effect the legitimate land use concerns of the ordinance. The only question here is whether an improved parcel must merge with an unimproved parcel. By requiring such a merger, the ordinance clearly furthers appropriate zoning policy by reducing the nonconformity of the previously improved parcel in a way that merging *two* improved parcels would not.[4]

For these reasons I believe that if Moody is to have any relief it must be by way of a variance. I, of course, express no opinion on that issue in this dissent.

Accordingly, I would affirm the judgment.

---

**4.** This is because requiring two previously improved lots to remain in the same ownership bears no relation to the salutary objectives of the zoning power. It furthers no purpose but consolidation of ownership, hardly part of zoning policy. *Cf. Your Home Inc. v. City of Portland,* 432 A.2d 1250, 1260 (Me.1981).

We addressed such a situation in *Keith v. Saco River Commission,* 464 A.2d 150 (Me. 1983). There, the property had been improved by three separate dwellings before the passage of the statute. We approved the landowner's request to divide the property into separate nonconforming lots, each containing one structure, since we determined that the mere change from tenant occupancy to owner occupancy would have no effect on the legitimate land use concerns of the statute. *Id.* at 156.

This case should not be read, however, to say that no regulation of condominium conversion is ever possible. Such regulation may have other than zoning policy as its objective.