# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**JAMES D. JOHNSON**
**LAUREN E. DIMMITT**
Rudolph, Fine, Porter & Johnson, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE AREA PLAN
COMMISSION OF EVANSVILLE-
VANDERBURGH COUNTY:

**DIRCK H. STAHL**
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROLLETT FAMILY FARMS, LLC, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  82A01-1301-PL-43 |
| | ) | |
| AREA PLAN COMMISSION OF | ) | |
| EVANSVILLE-VANDERBURGH COUNTY, | ) | |
| VANDERBURGH COUNTY BOARD OF | ) | |
| COMMISSIONERS, and VANDERBURGH | ) | |
| COUNTY RECORDER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Carl A. Heldt, Judge
Cause No. 82C01-0908-PL-324

**August 13, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Rollett Family Farms, LLC ("Rollett"), owns land in Vanderburgh County along the Ohio River. Part of this property is divided into "river camps," which Rollett leases to various tenants. The camps have existed in some form since at least 1938. Rollett now wishes to sell the camps to the individual tenants; however, the camps do not meet the requirements for subdivision as set forth in the Vanderburgh County Code ("VCC"). Rollett filed suit against the Area Plan Commission of Evansville-Vanderburgh County ("APC"), the Vanderburgh County Board of Commissioners, and the Vanderburgh County Recorder in an attempt to establish that the camps fit within an exemption for "lots of record" that were in existence prior to 1957, when the zoning and subdivision ordinances were adopted. Rollett was not able to provide any official documentation concerning the boundaries of the camps. Instead, Rollett relied on the testimony of long-time local residents, who testified with varying degrees of certainty that the configuration of the camps had remained essentially unchanged since before 1957. The trial court, relying on the lack of official documentation of the camps' boundaries, denied Rollett's claims.

Rollett now appeals, arguing that the exemption does not require written or recorded documentation. We disagree. The plain meaning of the words "of record" require some sort of documentation in the public records, such as a recorded plat or deed. Therefore, we affirm the judgment of the trial court.

**Facts and Procedural History**

Marie Rollett owned a parcel of land in Vanderburgh County that is bordered on the south by the Ohio River. The northern part of the parcel is farmland, and a strip along the river consists of several river camps. The river camps were leased to various tenants, some of whom built their own structures. Some of the tenants live there year-round and some do not. Roth Road runs through the river camps. The camps to the south of the road and immediately adjacent to the river have existed in some form since at least 1938. The camps on the north side of the road were established in the 1950s. Today, there are twenty-five camps and one additional small parcel that is used for river access. Nineteen of the camps have structures on them.

As part of her estate plan, Marie Rollett created Rollett Family Farms, LLC, to manage the property. Her children are the current members of Rollett, two of whom, John Rollett and Anne Schneider, are co-managers. The land owned by Rollett is assessed as one tax parcel; the improvements are assessed separately, and those taxes are paid by the tenants who own the improvements.

In October 2008, John made arrangements to sell one of the river camps to its current tenant. John contacted attorney Diane Bender and asked her to prepare a deed. Bender went to the Assessor's Office to make sure that she was completing the paperwork correctly, and she was directed to the APC. Bender learned that, for various reasons including the size of the lot, the conveyance would not be in compliance with the VCC's provisions concerning subdivisions. Bender later testified:

I explained the circumstance and they indicated that unless this fell within a certain exception … it would not … be able to be … recorded…. They said one of the exception[s] was if the property had been sold or leased … prior to, I forget if [19]56, [19]57 somewhere thereabouts.…

Tr. at 48-49. The record reflects that the VCC provisions on zoning and subdivisions were adopted in 1957 and that certain nonconforming lots that existed prior to 1957 could be "grandfathered in." *Id*. at 52. These lots are called "lots of record." *Id*. at 148. Bender testified that she looked into the issue again in November 2011, and the Assessor accompanied her to the APC, where she was informed that the deed could technically be recorded, but there would be "horrendous" penalties. *Id*. at 54.

Meanwhile, on August 7, 2009, Rollett filed a complaint against the APC, the Recorder, and the County Commissioners. The complaint, as amended on January 20, 2011, consists of four counts. Count I requested a "declaratory judgment directing that the APC be enjoined from interfering and/or otherwise preventing the conveyance of the individual tracts [i.e., the river camps] to third parties." Appellant's App. at 28. Count II alleged that the river camps "were established prior to the enactment of the local zoning ordinance and subdivision control ordinance" and that the tracts have "legal non-conforming descriptions and should be recognized as separate identifiable parcels of real estate." *Id*. at 28-29. Count III alleged that compliance with a local zoning ordinance is not a requirement for recording a deed and requested that the court direct the Recorder "to record any instruments of conveyance or deed of the individual tracts to third parties" as long as the deeds were in conformance with state statute. *Id*. at 29. Count IV alleged that VCC Section 16.04.040 is unenforceable to the extent that it "grants to the APC and its executive director the power to

4

approve instruments which convey real property interests as a condition of the instruments being recorded." *Id*. at 30 (emphasis removed).

After Rollett unsuccessfully moved for summary judgment, the case proceeded to trial on June 22, 2012. In preparation for his attempt to sell the camps to the tenants, John had hired Fred Kuester to create a survey of the property, which he completed in March 2008. Kuester testified that the lines of occupation were visible, and he relied on visual cues such as tree lines, the way that people were maintaining the camps, and pipes or other markers that people had placed to indicate their boundaries.

Rollett also presented testimony from four men who had lived in or near the camps for many years: Clarence Winiger, Louis Winiger, Ed Steinkamp, and Ronald Steinkamp. Their testimony indicates that at least some of the camps existed as early as 1938 and that the remaining camps were in existence by 1957. They testified with varying degrees of certainty that the configuration of the camps had remained essentially unchanged since before 1957 and that Kuester's survey accurately reflected the layout of the camps. Like Kuester, they relied on visual cues such as driveways and fences to form their opinion of where the boundaries were.

During the trial, Rollett stipulated that the camps do not qualify for subdivision pursuant to the current standards set forth in the VCC. Blaine Oliver, the assistant director of the APC, testified on behalf of the APC and confirmed that the

> use as a camp ground or a river camp is … fine. [I]n the zoning ordinance there is a special use for a private recreation facility. And, these camps were established well before this requirement came into being in the … zoning code.

5

So, we consider it an implied special use as long as it's continued to … be used for … a river camp or camp ground type of use.…

Tr. at 147-48. Oliver testified that the issue was not the use of the camps, but their conveyance, and whether they qualified as "lots of record":

> The question is are these leased parcels considered to be lots of record. You know, have they … changed in their size, lot of record is something that is in the same size and configuration as it was pre 1957. So, you know, one question is whether or not a leased parcel could even be considered as lot of record. That when Mr. Shively [Rollett's attorney at the time] called me to first inquire about this, I think I told him, we've never had this question before. So, I said if you have some documentation on, you know, when these were established I was hoping we would have some kind of recorded drawing that was pre 1957, that we could see or deeds that have legal descriptions in them or something.

*Id*. at 148-49.

Oliver further testified that the APC does not control what deeds are recorded. He explained that the APC had developed a procedure, in cooperation with the Assessor and the Auditor, of reviewing deeds before they are filed in order to alert the parties to potential violations of the zoning and subdivision codes before they occur.

On October 18, 2012, the trial court issued an order ruling in favor of the defendants. The court found that the APC does not control what deeds are recorded.[1] The court also concluded that the camps do not qualify as lots of record:

> 15. The Real Estate has never been divided into more than one lot or parcel in any legally cognizable manner before or after the Plaintiff took title to the Real Estate, whether by conveyance, adverse possession, judicial partition of property jointly owned or otherwise.…

---

[1] Rollett does not appear to challenge this aspect of the trial court's ruling.

16. The recollection of the various witnesses in this case as to how the River Camps were divided is not consistent, and even if it were, it does not constitute sufficient evidence to establish legal lot lines. Indiana law is very specific in providing that conveyances of land, whether they create new property boundaries or not, be in writing and otherwise comply with the Statute of Frauds. I.C. § 32-21-1-1 *et seq.*

....

18. While Indiana recognizes the legal establishment of a public right-of-way by use, there is no parallel theory to establish legal descriptions of parcels of land in the manner Plaintiff urges.

19. The Plaintiff urges the court to declare that the river camps in question are "legal nonconforming uses" and should therefore be exempt from the requirements of the Subdivision Code. However, this case is not about the use of the subject property. It is rather about the act of subdividing the subject property. On that issue, there is no evidence that the property lines for the river camps were ever legally established or the property was ever subdivided, especially prior to 1957. Consequently, there exists no prior legal nonconforming subdivision that would be an exception to the requirements of the subdivision code.

Appellant's App. at 22-23.

Rollett filed a motion to correct error, which was deemed denied. Rollett now appeals. The APC has filed an appellee's brief, but the Vanderburgh County Board of Commissioners and the Auditor have not participated in this appeal.

**Discussion and Decision**

The trial court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Our standard of review is well-settled:

First, we must determine whether the evidence supports the trial court's findings of fact. Second, we must determine whether those findings of fact support the trial court's conclusions of law. We will set aside the findings only if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A

7

judgment is clearly erroneous if it applies the wrong legal standard to properly found facts.

In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. To make a determination that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made.

*Hartley v. Hartley,* 862 N.E.2d 274, 281 (Ind. Ct. App. 2007) (quoting *Gregg v. Cooper,* 812 N.E.2d 210, 214-15 (Ind. Ct. App. 2004), *trans. denied*).

This case turns primarily on interpretation of the VCC.

Interpretation of an ordinance is subject to the same rules that govern the construction of a state statute. Words are to be given their plain, ordinary, and usual meaning, unless a contrary purpose is shown by the statute or ordinance itself. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. The goal in statutory construction is to determine and effect legislative intent. Courts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. If the legislative intent is clear from the language of the statute, the language prevails and will be given effect.

*Hall Drive Ins., Inc. v. City of Fort Wayne*, 773 N.E.2d 255, 257 (Ind. 2002) (citations and quotations omitted); *see also* VCC § 1.04.020(A) ("Unless otherwise provided herein, or by law or implication required, the same rules of construction, definition, and application shall govern the interpretation of this code as those governing the interpretation of the Indiana Code.").[2] In order to determine the plain and ordinary meaning of words, we may consult English language dictionaries. *Reed v. Reid*, 980 N.E.2d 277, 289 (Ind. 2012).

---

[2] The VCC is available online at http://www.codepublishing.com/in/vanderburghcounty/ (last visited July 18, 2013).

Rollett argues that VCC Section 17.12.120 exempts the river camps from the zoning and subdivision ordinances. That section states: "Any lot in a recorded subdivision may be considered suitable for building purposes. A lot of record which existed in its present configuration and size prior to 1957, may be considered a lot suitable for building purposes." In addition, the zoning ordinance defines the word "lot" as "an identifiable parcel of land having frontage on a public street or right-of-way, approved private streets, or acceptable easements." VCC § 17.08.030. The VCC does not define the term "lot of record," however.

Rollett argues that a "lot of record" is a parcel that meets the definition of "lot" in VCC Section 17.08.030 and, pursuant to VCC Section 17.12.120, existed in its present configuration and size prior to 1957. Rollett's argument fails to give effect to the words "of record." The ordinary meaning of these words refers to something that has been officially documented. *See* BLACK'S LAW DICTIONARY 1120 (8th ed. 2004) (defining "of record" as "[r]ecorded in the appropriate records," as in the phrase "counsel of record"); Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/record (last visited July 18, 2013) (defining "of record" as "being documented or attested" or "being authoritative or sanctioned").

While the parties have not cited any Indiana authority that sheds light on the meaning of these ordinances, the APC has cited a similar case from Maine, *Viles v. Town of Embden*, 905 A.2d 298, 304 (Me. 2006). The Vileses owned two lots, Lot 7 and Lot 21, which were once part of a larger parcel of land. The Vileses obtained a permit to build a house on Lot 7, which has frontage on Embden Pond. After a neighbor, Hinman, complained, the permit was

9

ultimately rescinded when the Embden Appeals Board determined that it was in violation of the Embden Shoreline Zoning Ordinance and that Lot 7 did not fit the exemption for lots of record.

On appeal, the Vileses argued that the Embden Appeals Board erred by concluding that Lot 7 was not a lot of record. The exemption in the zoning ordinance provides:

> A non-conforming lot of record as of the effective date of this Ordinance or amendment thereto may be built upon, without the need of a variance, provided that such lot is in separate ownership and not contiguous with any other lot in the same ownership, and that all provisions of this Ordinance except lot size and frontage can be met.

*Id*. at 303 (quoting Embden Shoreline Zoning Ordinance § 4.4.1). As of 1972, when the ordinance was enacted, Lot 7 and Lot 21 were both part of a larger parcel. The Supreme Court of Maine held that Lot 7 did not qualify as a lot of record because it did not exist as a separate lot in 1972:

> In *Camplin v. Town of York*, 471 A.2d 1035 (Me. 1984), we interpreted a grandfather clause that exempted "lots of record" from complying with an amendment to the zoning ordinance. In that case, as here, the term "lots of record" was undefined in the ordinance. We said that we give undefined terms "their common and generally accepted meanings unless the context requires otherwise." *Id*. at 1038. We held that the term applied to lots that were recorded at the time of the amendment and did not apply to lots that were developed or subdivided after the date of the amendment. *Id*. at 1039.
>
> Applying the common and generally accepted definition of "lots of record" from *Camplin*, we agree with Hinman that the Board erred as matter of law when it concluded that Lot 7 was a nonconforming lot of record in 1972. In 1972 Lot 7 did not exist as a separate lot. It was only part of a larger tract of land. Lot 7 did not become a separate lot until its boundaries were described in the 1980 deed from the owner of the larger tract to the Crosses [who owned Lots 7 and 21 prior to the Vileses], and it did not become a lot of record until the 1980 deed was recorded, which was after the effective date of the Ordinance.

*Id*. at 304.

We find this reasoning persuasive and conclude that the phrase "of record" indicates that the lots must be documented by a public record such as a recorded deed or plat. The inclusion of the words "of record" reflects an intent to create objective, reliable criteria for determining what lots are exempt from the zoning and subdivision ordinances. While there is some official documentation regarding the river camp structures, such as the property tax records and a 1957 quadrangle map created by the government, there is none pertaining to the boundaries of the individual camps, and Rollett does not contend otherwise.

Rollett contends that Oliver's testimony is consistent with its interpretation of the phrase "lot of record." We disagree. Oliver testified:

> The question is are these leased parcels considered to be lots of record. You know, have they … changed in their size, lot of record is something that is in the same size and configuration as it was pre 1957. So, you know, one question is whether or not a leased parcel could even be considered a lot of record. That when Mr. Shively [Rollett's attorney at the time] called me to first inquire about this, I think I told him, we've never had this question before. So, I said if you have some documentation on, you know, when these were established I was hoping we would have some kind of recorded drawing that was pre 1957, that we could see or deeds that have legal descriptions in them or something.

Tr. at 148-49. Oliver recognized that being the same size and configuration prior to 1957 is a requirement for exemption, but he also indicated that he expected to see documentation such as a recorded drawing or deed.

To the extent that Rollett is arguing that the zoning and subdivision ordinances are unenforceable because they interfere with vested property rights, we disagree. Rollett cites

11

*Town of Avon v. Harville*, which states:

> Generally, a zoning ordinance is subject to vested rights in the property of persons acquired prior to the enactment of a zoning restriction. *Lutz v. New Albany City Plan Com'n.*, 230 Ind. 74, 81, 101 N.E.2d 187, 190 (1951). Such ordinances ordinarily may not be applied retroactively so as to disturb existing uses of the property. *Id.* at 80, 101 N.E.2d at 189. Moreover, the use of land or buildings may be protected from existing zoning restrictions if the use is one which existed and was lawful when the restrictions became effective and which continued to exist since that time. *Metropolitan Dev. Com'n v. Goodman*, 588 N.E.2d 1281, 1285 (Ind. Ct. App. 1992).

718 N.E.2d 1194, 1198-99 (Ind. Ct. App. 1999), *trans. denied* (2000). *Town of Avon* and the cases cited therein dealt with whether a nonconforming use was permissible. In this case, the APC concedes that use of the property as a campground is a permissible nonconforming use. Rollett is not being prevented from using the property the same way that it did prior to 1957; it is being prohibited from creating new nonconforming lots that were not formally or legally established prior to 1957.

In sum, we conclude that a lot of record must be documented by a public record such as a recorded deed or plat. Because there is no evidence that the boundaries of the camps are set forth in any public record, the trial court correctly found that the exemption does not apply. Therefore, we affirm the judgment of the trial court.

Affirmed.

ROBB., C.J., and FRIEDLANDER, J., concur.