Philip G. LaPOINTE and Laurette
M. LaPointe

v.

CITY OF SACO and Zoning Board
of Appeals.

Supreme Judicial Court of Maine.

Argued April 30, 1980.

Decided Sept. 10, 1980.

Smith, Elliott, Wood & Nelson by Karen B. Lovell (orally), Roger S. Elliott, Saco, for plaintiffs.

Caron, Ayotte & Caron by Ronald E. Ayotte, Sr. (orally), Saco, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and ROBERTS, JJ.

ROBERTS, Justice.

The plaintiffs are owners of two corner lots in Saco. These lots are located between the parallel streets of Fairhaven and Beacon Avenues and enjoy a common rear boundary. Both plots of land abut Seaside Avenue.

After simultaneous purchase of the residential lots in 1956, the plaintiffs immediately built a house on the lot abutting on Fairhaven Avenue. When Saco's zoning ordinance was adopted in 1968, the lots were deemed substandard in area and width by operation of the ordinance. Intending to erect a residential dwelling on the lot abutting on Beacon Avenue, the plaintiffs applied for a building permit but the application was denied. On appeal to the Zoning Board of Appeals, the plaintiffs requested the Board to interpret the ordinance to "grandfather" the lots or, in the alternative, to grant a variance from the area and width requirements.

Section 510–3 of the Saco ordinance provides:

> In any zone, not withstanding limitations imposed by other provisions of this Ordinance a single lot of record at York County Registry of Deeds at the effective date of adoption of this amendment to the Ordinance may be built upon.

> Such a lot must be in separate ownership, and not of continuous frontage with other such lots in the same ownership. This provision shall apply even though such lots fail to meet the requirements for area or width, or both, that are generally applicable in the zone, provided, that yard dimensions and other requirements not involving area or width, of the lot shall conform to the regulations for the zone in which lot is located. Variance of area, width and yard requirements shall be obtained only through action of Board of Appeals.

> If two or more lots or combinations of lots and portions of lots with continuous frontage in single ownership are of record at York County Registry of Deeds at the time of the passage or amendment of this ordinance, and if all or part of the lots do not meet the requirement for lot width and area as established by this Ordinance, the lands involved shall be considered to be an individual parcel for the purpose of this Ordinance and no portion of said parcel shall be used which does not meet lot width and area requirements established by this Ordinance, nor shall any division of the parcel be made which leaves remaining any lot width or area below the requirements stated in this Ordinance.

The Board interpreted section 510–3 so that the two lots were deemed to be one. The operative language which the Board purportedly found to be controlling was the "continuous ownership" requirement in the

ordinance. In fact, the ordinance has no such provision. Rather, the ordinance deems two or more substandard lots to be one where they have "continuous frontage in single ownership." The variance request was never acted upon.

■ Pursuant to M.R.Civ.P. 80B, and 14 M.R.S.A. § 5951 et seq., the plaintiffs appealed to the Superior Court.[1] The court, in denying the plaintiffs' relief, held that the term "frontage" means "property line abutting the street," and that the plaintiffs' two lots were correctly classified as one lot within § 510–3. Here, too, the request for a variance was apparently ignored.

■ Because we disagree with the Board's interpretation of the ordinance, we reverse the judgment of the Superior Court. We therefore do not reach the issue of whether a variance is mandated as a matter of law.[2]

■ The meaning of terms or expressions in zoning ordinances is a question of statutory construction and is therefore one of law for the court. *Moyer v. Board of Zoning Appeals*, Me., 233 A.2d 311 (1967). *See* 8A McQuillin, *Municipal Corporations*, Zoning §§ 25–297 (1976). The terms of a zoning ordinance must be construed reasonably with regard both to the objects sought to be obtained and to the general structure of the ordinance as a whole. *Robinson v. Kennebunk Board of Appeals*, Me., 356 A.2d 196 (1976). When the term is ambiguous or uncertain, the court's construction of that term should be guided by the context in which the term appears. While undefined terms should be given their common and generally accepted meanings unless the context requires otherwise, terms which control and limit the use of real estate must be given a strict construction. *Moyer, supra.*

■ The court has also held that restrictions in a zoning ordinance must bear a substantial relation to public health, safety, morals or general welfare to be valid. *Barnard v. Zoning Bd. of Appeals of the Town of Yarmouth*, Me., 313 A.2d 741 (1974). Moreover, provisions of the ordinance may not be unreasonable or discriminatory as applied. *Morris v. City of Los Angeles*, 116 Cal.App.2d 856, 254 P.2d 935 (1953); 8 McQuillin, *Municipal Corporations*, Zoning § 25.140(a) (1976). A provision of a zoning ordinance may therefore be invalid as applied when it discriminatorily deprives a landowner of a normal use of his property. *Cross v. Planning Bd. of Chelmsford*, 345 Mass. 618, 189 N.E.2d 189 (1963).

Minimum area, width and frontage requirements are generally valid if reasonable. Their purpose is to eliminate overcrowding and to provide light and air. In the instant case, it is clear that the plaintiffs are challenging not the validity generally of the Saco ordinance but operation of the "merger" clause as applied to their two substandard lots. *See Barnard, supra.* Under the ordinance, the merger provision applies only where the lots are of "continuous frontage in single ownership." Nowhere in the ordinance is the term "frontage" defined.

Other courts have wrestled with the difficulty of applying the merger doctrine to the relatively rare cases involving back to back

---

1. Because the plaintiffs also sought relief in the nature of mandamus to compel action on the request for a variance, the Zoning Board of Appeals was properly made a party defendant, unlike the case in *Inhabitants of the Town of Boothbay Harbor v. Russell*, Me., 410 A.2d 554 (1980).

2. We do note that the Superior Court should have remanded the matter immediately upon determining that the variance request had not been acted upon. *Cf. Brown v. Town of Wells*, Me., 402 A.2d 57 (1979) (rationale of decision of Board of Selectmen unclear). The Board has an obligation and responsibility to decide issues properly presented to it. Although we do not reach the question of variance, we do not condone the Board's failure to dispose of that issue.

and "L" shaped lots. The doctrine has been held inapplicable where the alleged continuous frontage involved only a common rear boundary, on the theory that it would require "a strained finding that these two plots were intended to form one exceptionally long, narrow plot and would be in total disregard of the fact that each fronts on a different street." 2 Rathkopf, *The Law of Zoning and Planning*, § 32.06(2) (1977).

■ We agree with the court in *Guazzo v. Chave*, 59 Misc.2d 1050, 301 N.Y.S.2d 193, 197 (1969), where it said: "Parcels with frontage on separate public streets are separate and distinct plots where they substantially meet the depth characteristics of the area as it has developed, notwithstanding their common ownership and rear contiguity." *But see Hemlock Development Corp. v. McGuire*, 35 App.Div.2d 567, 313 N.Y.S.2d 608 (1970) (mere fact of rear contiguity alone does not preclude merger).

We are faced, however, not merely with back to back parcels with only a common rear boundary, but with back to back corner parcels, thereby giving rise to an added difficulty. Neither side has cited us any case law dealing with this question, nor has our research disclosed any. We need not now decide whether the Superior Court erred in its interpretation of frontage because we conclude that the merger provision of section 510–3 is intended to apply only to unimproved lots.

The plaintiffs suggest that the first paragraph of section 510–3 refers only to unimproved lots of record since it provides that they "may be built upon." The plaintiffs argue further that the first sentence of the second paragraph should be read as follows: "Such a [unimproved] lot must be in separate ownership, and not of continuous frontage with other such [unimproved] lots in the same ownership." Thus far the argument might not be conclusive. A look at the restrictions upon merged lots under the third paragraph, however, compels the conclusion that only unimproved lots are intended.

■ After providing for merger of lots in common ownership, the third paragraph states that "no portion of said [merged] parcel shall be used which does not meet lot width and area requirements   .   .   ., nor shall any division of the [merged] parcel be made which leaves remaining any lot width or area below the requirements .   .   . ." Clearly it was not the intention of the city to prevent the separate use or the separate conveyance of continuous non–conforming lots, previously improved separately, simply because they happen to exist in common ownership. Had the city so intended, the provision might be unenforceable. See the estoppel–like concept applied in *Burke v. Spring Lake Bd. of Adjustment*, 52 N.J.Super. 498, 145 A.2d 790 (1958).

■ The entire merger provision must be applicable only to continuous *unimproved* lots of record in common ownership. We hold, accordingly, that the merger provision does not apply to the plaintiffs' single unimproved lot abutting on Beacon Avenue and that, regardless of requirements for area or width, the lot may be built upon. Assuming the plaintiffs otherwise comply with zoning requirements, the application for a building permit ought to have been granted.

The entry is:

Judgment reversed.

Remanded to the Superior Court with direction to enter a judgment that plaintiffs' lot abutting on Beacon Avenue is a single lot of record under section 510–3.

All concurring.