CITY OF PORTLAND

v.

GRACE BAPTIST CHURCH.

Supreme Judicial Court of Maine.

Argued Sept. 13, 1988.
Decided Dec. 12, 1988.

**534**

David A. Lourie (orally), Corp. Counsel, City of Portland, Portland, for plaintiff.

John E. Geary (orally), Richard A. Davis, Portland, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

GLASSMAN, Justice.

The plaintiff, City of Portland (City), appeals from the judgment of the Superior Court (Cumberland County, *Perkins, J.*), affirming the judgment of the District Court (Portland, *Cleaves, J.*), that the defendant, Grace Baptist Church (Church), did not violate the Portland Site Plan Ordinance. The City contends that the court erred in holding that the approval of the Portland Planning Board (Board) was not required before the Church cleared and filled an undeveloped portion of its land and extended and paved a parking area. For the reasons hereinafter set forth, we affirm the judgment.

In the spring of 1983, the Church submitted to the Board a site plan for its approval of the construction of a family activity center on the easterly side of the existing church building on Summit Street in Portland and a paved parking lot for 176 vehicles and an unpaved, gravel parking lot for approximately 50 additional vehicles. Together with the Church's existing buildings, the proposed developed area would utilize approximately two acres of an approximate 10–acre parcel owned by the Church.

At a meeting on April 12, 1983, the Board unanimously approved the proposed development, subject only to approval of the Church's landscaping plan by the city arborist. After securing a building permit, the Church completed the development, including landscaping, in accordance with the approved plan.

During the next few years, the Church cleared and filled a substantial portion of a wooded area depicted on the site plan as being northerly of and adjacent to the developed area. The Church also extended and paved the gravel lot approximately twenty-five feet beyond the area designated on the approved site plan. Pursuant to the procedure set forth in M.R.Civ.P. 80K, the City filed a land use citation and complaint against the Church in the District Court, alleging that by this activity the Church had violated the Site Plan Ordi-

nance and seeking injunctive relief and the assessment of a civil penalty.

After a hearing, the court found that there were no express restrictions imposed by the Board prohibiting alterations to the undeveloped area of the site plan and that the Church's clearing and filling activities did not constitute "development" under the ordinance.[1] The court also found that the extension and paving of the gravel lot did not alter the approved site plan or constitute a "development" under the ordinance and entered a judgment for the Church. On appeal, the Superior Court affirmed the judgment of the District Court, and this appeal followed.

## I.

The City first contends that the Church had to obtain Board approval before clearing and filling an undeveloped portion of the approved site plan. The City argues that this undeveloped portion of the site screened the development and handled drainage problems created by the developed portion of the site and, therefore, could be disturbed only with further Board approval. We disagree.

We have previously stated that in construing an ordinance it is our duty to ascertain and effectuate the intent of the legislative body. *Moyer v. Board of Zoning Appeals*, 233 A.2d 311, 317 (Me.1967). In determining legislative intent, we first examine the language of the ordinance. *Id.* Unless the ordinance itself discloses a contrary intent, the plain meaning of the words controls. *Id.* Ordinances that curtail and limit use of real estate must be strictly construed, and their provisions may not be extended by implication. *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 (Me. 1980).

Section 14–521 of the Portland Site Plan Ordinance states the ordinance's purpose:

[T]o encourage the use of the best planning by private developers in an age where there is available sophisticated technology in building and design; and to promote the growth of the city in a manner that will not only provide its citizens with a safe, healthy and beneficial environment but will also protect property values and thereby secure the fiscal base for public services. . . .

To further the purpose of the ordinance, the Board has the authority under the ordinance to approve a site plan with conditions.[2] Section 14–526(b) of the Site Plan Ordinance sets forth the requisites of a final site plan for a major development. It requires a scaled map of, *inter alia*, boundaries of the site; total land area of the site; topography of the entire site; location of watercourses, marshes, rock outcroppings, and wooded areas; ground floor area and elevations of buildings and structures existing and proposed; approximate location of buildings or structures on abutting parcels; landscape plan showing location, type and approximate size of plantings; and the location and dimensions of all fencing and screening.

In the instant case, the Church, in conformity with the ordinance, on its map submitted to the Board indicated, *inter alia*, the "wooded areas,"[3] "topography," and its "landscape plan." While "wooded areas" can be "screening," it cannot be presumed that the area designated on the map as "wooded" was proposed by the Church to be "screening" unless so labeled. The Church did not label the "wooded area" as "screening," or propose in its landscaping plan to screen the area north of the proposed development. Nor can it be presumed that the "topography" of the total land area adjacent to the actual development site would remain as shown on the map. The map enabled the Board to assess the impact of the proposed development on

---

1. The City does not challenge the finding that the clearing and filling activities did not constitute an unauthorized development.

2. Section 14–522 of the Site Plan Ordinance defines "approval" of a site plan by any board or department "shall include approval with conditions when all the conditions are accepted by the applicant."

3. We note that the approved site plan did not set forth the location, if any, of "watercourses, marshes or rock outcroppings."

the surrounding area and, if required to further the purposes of the Site Plan Ordinance, to impose specific conditions to its approval of the proposed development. The City agrees, as it must, that the Church fully complied with the only condition imposed by the Board. The trial court properly held that by its clearing and filling activities the Church had not violated the Site Plan Ordinance.

## II.

The City further contends that when the Church extended and paved the gravel parking area, it altered the approved site plan and "developed" land without the requisite Board approval. We reject this contention.

■ The site plan proposed a 176-space, paved parking lot, as well as an unpaved gravel lot. Unlike the proposed paved lot, the gravel lot was outlined by broken lines on the map. By applying the scale of the map to the area marked by the broken lines, the area extends approximately 50 feet in a northerly direction from the paved lot. It was identified on the map as "unpaved parking (gravel) app. 50 vehicles." To accommodate 50 cars, the Church extended this area 75 feet beyond the initially paved parking area.

The record is somewhat unclear and ambiguous with respect to a determination of the precise dimensions of the graveled parking area. The District Court properly found that the lack of any dimensions noted on the map, coupled with the fact that the area was depicted by broken lines, indicates that the more significant designation was the capacity of the additional area to accommodate approximately 50 vehicles.

■ The District Court also properly found that the paving of the gravel lot does not constitute a development within the purview of the ordinance. Section 14-522 of the Site Plan Ordinance defines development, in part, as "the construction of one (1) or more new structures, building additions or surface parking areas." There is no definition for construction in the ordinance. However, the parties agreed that the term "construction" is appropriately defined as "the act of building or forming." P. Gove, *Webster's Third New Int'l Dictionary* (1971). Here, the Church caused bituminous concrete to be applied to a surface parking area previously formed pursuant to the approved site plan. The trial court properly held that this application was not construction of a new surface parking area requiring approval of the Board.

The entry is:

Judgment affirmed.

WATHEN and CLIFFORD, JJ., concurring.

HORNBY, Justice, dissenting.

Although churches are a permitted use in a Portland single family residential zone, Grace Baptist Church's proposal to build a 10,850 square foot gymnasium building provoked some concern among neighborhood residents. Grace Baptist's final site plan showed landscaping toward the street side and a large wooded area to the rear of the proposed building, and an unpaved gravel parking area to the rear of a paved parking area (in the direction of water flowage, according to the plan contours). At the public hearing the Portland Planning Board's discussion focused primarily on landscaping on the sides of the building to shield it from neighborhood view. When the question of drainage from the paved parking area arose, it was pointed out that the gravel area would absorb some of the runoff and that the land slopes downward toward the rear of the lot. The Board ultimately "voted to approve the final site plan for Grace Baptist Church's new gymnasium building subject to approval of the planting plan by the city arborist." Now, the Court holds, Grace Baptist can cut down the trees in the wooded area (40 medium pine trees), change the topography that affects the runoff and cover the unpaved parking area with bituminous concrete—all without further review by the Planning Board. I dissent.

Under Portland's Site Plan Ordinance, Grace Baptist was responsible for preparing a final site plan for the City's review

before undertaking its original gymnasium development. The ordinance specifies certain things that must be included in the plan, such as topography (indicating both existing and proposed contours), location of water courses, marshes, rock outcroppings and wooded areas, a landscape plan, and the location and dimensions of all fencing and screening. Section 14–526(b)(1). The landowner must also describe any problems of drainage or topography or affirmatively represent that there are none. Section 14–526(b)(2)(f). The Planning Board is then required to approve the final site plan unless it makes specific findings of deficiencies—for example, paved areas that will impose undue burdens on sewer, sanitary and storm drains; onsite landscaping that does not provide adequate protection to neighboring properties; or failure to provide for the soil and drainage problems that the development will produce. Section 14–527(a). Each of these is considered a "deficiency" that the Board must describe in writing, explaining how it could be resolved or that it is incapable of resolution. Section 14–527(b).

In Grace Baptist's final site plan there was no deficiency in landscaping or screening to the rear of the gymnasium because there was a large wooded area there between the new building and any neighboring property owners. There was no deficiency in drainage or water runoff because of the existing topography and the ability of the gravel parking area to absorb some of the runoff. Thus the Board could not have rejected the final site plan on either of these grounds. The Court now concludes, however, that the Board was required to make a specific condition of its approval the requirement that Grace Baptist not alter the wooded area nor the topography nor the status of the unpaved parking area. Because the Board did not list these as specific conditions, Grace Baptist can now alter them without Board approval.

It is hard to see how Grace Baptist could have been misled into thinking that the Planning Board would not rely upon Grace Baptist's description of the site in the final plan it submitted for approval. The Court seems to distinguish between an area on

the site where development is proposed and the rest of the site. The site plan ordinance makes no such distinction. If, as the Court says, the purpose of the final site plan is to enable the Board "to assess the impact of the proposed development on the surrounding area and, if required to further the purposes of the site plan ordinance, to impose specific conditions to its approval of the proposed development," the developer's description of the characteristics of the rest of the site is critical. If they are satisfactory, they cannot be considered deficiencies in the final site plan that prompt imposition of specific requirements for their resolution. Since it is the landowner's plan that is being approved, not the Board's, and since the landowner has described the site's characteristics in the context of which it seeks approval, there should be no need for the Board to repeat each satisfactory element as a condition of the approval.

The surfacing of the gravel parking lot with bituminous concrete is the most egregious alteration; it should fail even under the Court's analysis. This gravel parking lot was in fact a specified part of what the Court describes as the "proposed developed area" in Grace Baptist's site plan. It was expressly labeled on the final site plan as "Unpaved Parking (Gravel)." When a developer thus states on its final site plan that it is constructing an unpaved, gravel parking lot, I cannot comprehend why the Planning Board's approval must include as an extra condition the requirement that the unpaved parking lot be in fact unpaved. I do concur with the Court's conclusion concerning the dimensions of the parking area.

The decision in this case will not have a monumental effect on *new* site plan proposals in Portland or elsewhere in Maine because planning boards will in the future presumably make all elements of a site plan express conditions of their approval. The decision does, however, have substantial significance for future development of site plans already approved and implemented. Landowners and planning boards will now dispute what part of the final site plan was the "proposed developed area," the

description of which is binding upon land-owners (in the absence of future Board approvals), as distinguished from the rest of the plan which apparently has no significance. Equally important, the Court's parsimonious reading of the Portland ordinance sets an unfortunate tone for our review of such laws as municipalities prepare to grapple with the increasingly difficult issue of Maine land use in the last decade of the 20th century.