**GRANT'S FARM ASSOCIATES, INC., et al.**

v.

**TOWN OF KITTERY, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1989.

Decided March 7, 1989.

Christopher L. Vaniotis (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiffs.

Duncan A. McEachern (orally), McEachern & Thornhill, Kittery, for defendants.

Before McKUSICK, C.J., and
ROBERTS, GLASSMAN, CLIFFORD
and HORNBY, JJ.

McKUSICK, Chief Justice.

In this action under M.R.Civ.P. 80B, Grant's Farm Associates, Inc. and its two principal shareholder-officers ("the developers") seek reversal of the Kittery Planning Board's denial of preliminary subdivision approval for their proposed condominium development, to be called Shepard's Cove. The developers argued before the Superior Court, and argue again before us on appeal, that the Board's denial was not supported by the record before it. We do not agree, and we therefore affirm the judgment of the Superior Court (York County; *Brennan, J.*) upholding the Planning Board's action.

The Shepard's Cove proposal calls for some 200 condominium units developed in clusters, with more than 90% of the site left as open space. The site, measuring almost 100 acres, is adjacent to the town hall complex near the Kittery traffic circle. It appears to be the largest tract of undeveloped land in the area between the most densely populated section of Kittery and the commercial strip along U.S. Route One. The site falls within the "Urban Residence" zone, and a portion of the site is subject to two additional zoning regimes because the site is bounded on two sides by the tidal estuaries of Spruce Creek and Gerry Cove. A 250–foot–wide strip along the shoreline is subject to shoreland restrictions. Of that, a 100–foot strip is further subject to resource protection restrictions.

The Shepard's Cove proposal attracted considerable public attention in Kittery, with active citizen participation on both sides at the public hearings. Circulators of a petition against the project claimed to have collected signatures in a number surpassing a quarter of the total votes cast in the preceding municipal election. After an extensive period of study and negotiation, almost two years after the developers submitted their first sketch plan to the Planning Board and almost a year after the initial public hearing on the proposal, they submitted the final version of their preliminary subdivision plan to the Board at a public meeting on December 11, 1986. That same evening, the Board voted to deny preliminary subdivision approval and to meet in an open workshop session on December 17 to prepare detailed written findings of fact.

After receiving the Board's findings, the developers commenced a multi-count action against the Board and the Town. Only the count seeking direct review under Rule 80B of the Board's decision is the subject of this appeal: that count was heard first under a bifurcation order, and the Superior Court entered final judgment in favor of the Town pursuant to M.R.Civ.P. 54(b).

■ The Superior Court having acted exclusively in an appellate role, we review directly the record made before the Planning Board for the limited purpose of "determining whether there was an abuse of discretion, error of law, or findings not supported by substantial evidence in the record." *Lakes Envtl. Ass'n v. Town of Naples,* 486 A.2d 91, 94 (Me.1984). Here the only contention made by the developers is an evidentiary one; namely, that the record before the Board does not support its denial of subdivision approval.[1] We do not agree. The developers had the burden of proof before the Board. 30 M.R.S.A. §§ 4956(2)–4956(3) (Pamph.1988);[2] *see Bruk v. Town of Georgetown,* 436 A.2d 894, 898 (Me.1981). The Board, however, did not rest its denial merely on a ruling that the developers had failed to carry their burden of proof; rather it found as fact on the record before it that the proposed project would have specific adverse consequences in violation of the criteria for subdivision approval prescribed by law. In this situation, to prevail on appeal the developers must show not only that those Board findings of adverse consequences are unsupported by record evidence, but also that the record compels contrary findings. *See Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983).

■ Under the Town's subdivision ordinance, "[p]reliminary approval … [is] an expression of approval of the design submitted on the preliminary plan as a guide to the preparation of the final plan." Kittery, Me., Subdivision Standards, § 6.1.7 (May 31, 1973). In its three-page "Decision and Findings of Fact," the Board set forth in detail its conclusion that the project design would violate five distinct criteria prescribed by the subdivision ordinance.[3] Because the applicant must demonstrate that the proposed subdivision will satisfy every requirement of the state statute and the town ordinance, the Board's five grounds for denial are alternative and independent of one another. Finding substantial evidence supporting at least two of the Board's grounds for denial, namely, traffic conditions and shoreline impact, we need not address the other three. Since on each of those grounds the record amply supports the Board's finding of fact adverse to the developers, the record *a fortiori* did not compel the Board to find that the developers had carried their burden of proof.

One criterion the proposed subdivision had to satisfy is that it "not cause unreasonable highway or public road congestion or unsafe conditions with respect to use of the highways or public roads existing or proposed." 30 M.R.S.A. § 4956(3)(E) (Pamph.1988); Kittery Subdivision Standards § 1.1(E). The Board found that

1. Although the developers allege that the Planning Board proceedings were tainted by a predisposition against development of the site, the Board's decisionmaking process left behind an ample record for judicial review, and the developers do not contest the sufficiency of that record as a basis for deciding this case. Without endorsing all of the Board's practices, we nevertheless conclude, as we did in *Hall v. Board of Environmental Protection,* 498 A.2d 260, 266 (Me.1985), that "the resulting bias or unfairness, if any, in this case does not rise to the level that we censured in [*Mutton Hill Estates v. Town of Oakland,* 468 A.2d 989 (Me. 1983) ]." As always, in weighing the substantiality of the evidence, it is proper to take into account the source of the evidence, and we have done so.

2. Effective Mar. 1, 1989, section 4956 has been recodified as 30–A M.R.S.A. § 4551.

3. The Planning Board found that the proposed subdivision:

1) "would cause unreasonable highway or public road congestion and unsafe conditions," in violation of Kittery, Me., Subdivision Standards, § 1.1(E) (May 31, 1973);
2) would place "an unreasonable burden on the ability of the local governments to provide municipal and governmental services," in violation of *id.* § 1.1(H);
3) "will have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas," in violation of *id.* § 1.1(I);
4) "was not in conformance with a duly adopted Subdivision Regulation or Ordinance, Comprehensive Plan, Development Plan, or Land Use Plan," in violation of *id.* § 1.1(J); and
5) "within the 250' area of Spruce Creek would adversely affect the quality [or shoreline] of such body of water," in violation of *id.* § 1.1(L).

*See also* 30 M.R.S.A. §§ 4956(3)(E), 4956(3)(I), 4956(3)(J), 4956(3)(L) (Pamph.1988).

"sight factors, slope, sight distance, road width and anticipated traffic volumes despite proposed mitigating measures" would all contribute to unsafe conditions at the entrance to Shepard's Cove from State Highway 236. It also found that existing problems at the Kittery traffic circle would be aggravated by prolonging the rush hour and increasing overall traffic volume by 10%.

Rotary traffic during the Portsmouth Naval Shipyard rush hour is already characterized as "unacceptable" by the State Department of Transportation. The developers argue that the obligation not to "*cause* unreasonable ... congestion or unsafe conditions" must be read narrowly so that exacerbation of preexisting traffic hazards cannot be grounds for denial of a permit. That argument belies common sense. Whether exacerbation of an existing problem is merely part of the background effect of inevitable growth, or can properly be said to "cause" a further traffic hazard, must be determined by the balancing analysis inherent in the "reasonableness" standard of the statute and ordinance.

In any event, the primary focus of the Planning Board's traffic hazard findings was not the congestion at the rotary. The Board also found that the intersection between Route 236 and the proposed access road for the project "would create unsafe conditions despite proposed mitigating measures," especially in winter driving conditions. As it passes the proposed entrance, the highway slopes toward the rotary, some 450 feet away, with a 5.8% downgrade, which the developers downplay as "slightly greater (by eight tenths of one percent) than would be recommended for a new road." The existing condition is more accurately characterized as *sixteen* percent higher than the acceptable slope. We cannot say it was unreasonable for the Board to find that the proposed entrance location would create a substantial traffic hazard on the artery connecting the Naval Shipyard with all points north.

A second criterion the proposed subdivision had to satisfy is that "[w]henever situated, in whole or part, within two hundred and fifty (250) feet of any pond, lake, river or tidal waters, [it] will not adversely affect the quality of such body of water or unreasonably affect the shoreline of such body of water." 30 M.R.S.A. § 4956(3)(L); Kittery Subdivision Standards § 1.1(L). In its review of the Shepard's Cove proposal, the Planning Board found that untreated surface water, possibly polluted, would run into Spruce Creek; that construction would change drainage patterns for the worse; that nesting and brooding areas for waterfowl and salt water wetland birds would be eliminated; and that the "critical edge" wildlife habitat along the shoreline would be damaged.

The developers respond that the Board is applying an unduly stringent standard of review for a site that is in the urban residence zone. We do not agree. Although the urban residence zoning of the area to the east of Route One arguably embodies a legislative preference for competing human needs that would be met by the Shepard's Cove proposal, that argument has little force within the 250–foot shoreland zone which encompasses most of the so-called critical edge. Chapter II, section I(I)(1) of the Kittery Zoning Ordinance expressly provides: "Such areas intentionally embrace and overlay parts of other Kittery Zoning Districts in order that the purposes of the Shoreland Control Law [38 M.R.S.A. §§ 435–447 (Pamph.1988)] can best be served." It is simply not true that all parts of the urban residence zone must be regarded as equally well suited to high-density development.

Moreover, the developers concede that during construction they would make significant encroachments even on the narrower resource protection zone, subject to still more stringent restrictions. They argue, however, that the impact would be temporary because the structures themselves as finally built would have at least a 100–foot shoreline setback and that extensive reclamation measures have been designed to mitigate any lasting adverse effects. The Planning Board's skepticism about the efficacy of the reclamation plan is unwarranted, according to the developers, because the proposal must pass environmental im-

pact screening by the Board of Environmental Protection (BEP) before it can return to the Kittery Board for final approval. 38 M.R.S.A. §§ 481–489 (1978 & Pamph.1988). Nothing in the Site Location of Development Act, however, even suggests that BEP review preempts a separate review by the Kittery Planning Board under section 4956(3)(L) of the state subdivision statute and section 1.1(L) of the Kittery ordinance. Environmental damage is easy to do and difficult to undo. It is therefore often the case that an applicant going through a multistage review process must simultaneously persuade different agencies that the same or similar standards are met. *See Larrivee v. Timmons,* 549 A.2d 744, 747–48 (Me.1988).

This case turns on factual issues. The developers had the burden of proof, and they have not shown that a factfinder would rationally be compelled to find that their project factually met each and every one of the requirements prescribed by law for subdivision approval. The presence in the record of substantial evidence supporting the Board's findings to the contrary establishes *a fortiori* the developers' failure to carry their burden of proof.

The entry is: Judgment affirmed.

All concurring.