**1048** ■ ■

Walter B. POWER, Jr., et al.

v.

**TOWN OF SHAPLEIGH.**

Supreme Judicial Court of Maine.

Argued March 18, 1992.
Decided April 15, 1992.

Robert Furbish (orally), Smith & Elliott, Saco, for plaintiff.

Gregory P. McCullough (orally), Ronald D. Bourque, Bourque & Clegg, Sanford, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

The plaintiffs, Walter Power and Margaret Power, appeal from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) affirming the decisions of the Shapleigh Board of Appeals (Board). They contend that the Board erred in denying their application for building permits to construct two single-family dwellings and in denying their request for variances from the 80,000–square–foot minimum lot size required for such construction by Article 4, section 4.3 of the Shapleigh Zoning Ordinance (Ordinance). We affirm the judgment.

The Powers are the record owners of nine contiguous lots, numbered 21 through 29, situated between 16th Street and Mousam Lake in Shapleigh. Each lot has approximately 50 feet of lake frontage and extends 200 feet in depth. In 1947 a cottage and a subsurface waste water disposal system were built on lots 25 and 26. In 1950 a cottage and a disposal system were constructed on lots 27 and 28. Lots 21 through 24 and lot 29 remain vacant. In August 1989, the Powers applied for building permits to construct a single-family dwelling on lots 21 through 24 and a second single-family dwelling on lot 29. Shapleigh's Code Enforcement Officer (CEO) denied the application for reasons including:

> [F]irst ... that the lots which you plan to develop no longer exist due to the contiguous lots in the same ownership having been merged by law.

> [S]econd ... that dividing the land into the parcels indicated in your application would create nonconforming lots of less than 80,000 square feet as required in Article 4, Section 4.3 for the dimensional requirements.

The Powers filed a timely appeal to the Board and also sought a variance from the 80,000 square foot minimum lot size requirement for each proposed construction site. After hearings, the Board affirmed the CEO's denial of the building permits and denied the Powers' requests for variances. The Powers' complaints filed in the Superior Court seeking a review of the Board's decisions pursuant to M.R.Civ.P. 80B were consolidated for hearing. From a judgment of the Superior Court affirming the decisions of the Board, the Powers appeal. Because the Superior Court acted exclusively in an appellate role, "we review directly the record made before the ... Board for the limited purpose of determining whether there was an abuse of discretion, error of law, or findings not supported by substantial evidence in the record." *Grant's Farm Associates, Inc. v. Town of Kittery*, 554 A.2d 799, 801 (Me.1989) (citation omitted).

I.

The Administrative Appeal

 The Powers contend that although lots 21 through 24, merged by the Ordinance into one lot, and lot 29 do not conform to the minimum lot size requirement of the Ordinance, those lots may nonetheless be built on, without the need for a variance, due to an Ordinance exception to the minimum lot size requirements.

Table 4.3, together with section 4.3.1(C) set forth in Article 4 of the Ordinance, requires lots abutting lakes to have a minimum area of 80,000 square feet per dwelling unit. The Powers' lot 29 is 50 by 200 feet and hence is only 10,000 square feet; the combined lots 21 through 24 are 200 by 200 feet and hence comprise 40,000 square feet. Quite clearly both lots on which the Powers propose to build are "non-conforming lots of record" defined by section 1.4.2.3 of the Ordinance as "single lot[s] of record which ... do[ ] not meet the area ... requirements, of the District in which [they] are located." Section 1.4.5 of the Ordinance governs non-conforming lots of record and reads, in pertinent part, as follows:

1.4.5 *Non–Conforming Lots of Record*
 a. *Vacant Lots:* A non-conforming lot of record may be built upon provided that such lot shall be in separate ownership and not contiguous with any other lot in the same ownership, and that all provisions of the Ordinance except lot size and frontage can be met. Variance of yard or other requirements not involving area or frontage shall be obtained only by action of the Board of Appeals.
 b. *Built Lots:* ....
 c. *Contiguous Built Lots:* ....
 d. *Contiguous Vacant Lots:* If two or more vacant, contiguous lots or parcels are in single or joint ownership of record at the time of adoption or amendment of this Ordinance, if these lots do not individually meet the dimensional requirements of this Ordinance or subsequent amendment, the lots shall be combined to the extent necessary to meet the dimensional standards, except in situations where the contiguous lots front onto different streets, or except where rights have vested (as described below).
 e. *Vested Rights:* ....

Although section 1.4.5(d) requires only that lots 21 through 24 merge into one lot, that merged lot and lot 29 are nonetheless non-conforming lots of record for which a variance is required unless another section grants exception to the minimum lot size requirement. Contrary to the Powers' contention, the exception contained in section 1.4.5(a) does not apply to their lots.

"The construction of a municipal ordinance is a question of law for the court...." *Farley v. Town of Lyman*, 557 A.2d 197, 200 (Me.1989). In construing a municipal ordinance we must ascertain and give effect to the intent of the legislative body. *See City of Portland v. Grace Baptist Church*, 552 A.2d 533, 535 (Me.1988). In determining that intent, the plain meaning of the language controls. *Id.* Contrary to the contentions of the Powers, unlike Saco's zoning ordinance at issue in *LaPointe v. City of Saco*, 419 A.2d 1013, 1016 (Me.1980), where the language of the

ordinance was ambiguous and thus led us to decide that Saco did not intend the merger of improved and vacant lots, section 1.4.5(d) of the Shapleigh Zoning Ordinance plainly excepts from the minimum lot size requirement only vacant lots that are not contiguous to *"any* other lot in the same ownership." (Emphasis added).[1]

We do not agree with the Powers that the phrase "any other lot" as used in section 1.4.5(d) means "any other *vacant* lot." That "any other lot" must refer to either built or unbuilt lots becomes clear not only from the definition of the word "any" to mean "some, no matter ... what kind," *Webster's New World Dictionary*, p. 62 (1976), but also from the fact that the Town of Shapleigh in section 1.4.5 used the modifiers "built" and "vacant" where such modification was intended. *See Robinson v. Board of Appeals, Town of Kennebunk*, 356 A.2d 196, 198 (Me.1976) (terms of a zoning ordinance construed in light of ordinance as a whole). To adopt the Powers' construction of the phrase "any other lot" to mean "any vacant lot" would render section 1.4.5(d) surplusage. *See Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me.1979) ("[n]othing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible"). Because the Powers' lots are non-conforming lots of record for which no exception lies to the minimum lot size requirements, the Board properly affirmed the decision of the CEO denying the Powers' application for permits to construct a dwelling on either of the two lots.

## II.

### Request for a Variance

■ Pursuant to 30–A M.R.S.A. § 4353(4) (Pamph.1991) the Board may grant the Powers' variances for their requested building permits if a strict applica-

tion of the minimum lot size requirement would in each instance cause them "undue hardship." Undue hardship exists if, and only if, the following four requirements are met:

A. The land in question can not yield a reasonable return unless a variance is granted;

B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

C. The granting of a variance will not alter the essential character of the locality; and

D. The hardship is not the result of action taken by the applicant or a prior owner.

30–A M.R.S.A. § 4353(4). The Board, in denying the Powers' requested variances to the two lots, found, *inter alia*, that the Powers had failed to meet the requirements of section 4353(4)(A).

The Powers had the burden of proof before the Board to establish that they had satisfied all four of the requirements for a variance set forth in section 4353(4). *See Bruk v. Town of Georgetown*, 436 A.2d 894, 898 (Me.1981). To prevail on appeal, the Powers must show that the record before the Board compels a contrary finding. *See Grant's Farm Associates, Inc. v. Town of Kittery*, 554 A.2d at 801 (citing *Luce Co. v. Hoefler*, 464 A.2d 213, 215 (Me.1983)); *see also Fichter v. Board of Environ. Prot.*, 604 A.2d 433, 438 (Me. 1992). The record reflects that in their applications for variances the Powers merely asserted that the lots would not yield a reasonable return without a variance. They submitted no evidence to the Board in support of that assertion. On the evidence before the Board, it cannot be said the Board was compelled to find that the Powers had met the requirements of section

---

1. The Powers' reliance on our decision in *LaPointe v. City of Saco*, 419 A.2d 1013 (Me.1980), is misplaced. The merger ordinance in *LaPointe*, unlike that at issue in the present case, did not distinguish between improved and vacant lots. Based on our examination of not only the provision on merger but the provision addressing the restrictions on merged lots, we determined that the city could not have intended to prevent the separate use or separate conveyance of contiguous non-conforming lots, previously separately improved, simply because the lots existed in common ownership. Accordingly, we held that the merger provision could only be applicable to contiguous vacant lots of record in common ownership.

4353(4). Accordingly, the Board properly denied the requested variances.

The entry is:

Judgment affirmed.

All concurring.

