**John JACQUES, et al.**

v.

**CITY OF AUBURN, et al.**

Supreme Judicial Court of Maine.

Argued March 2, 1993.
Decided April 8, 1993.

Michelle A. Landmann (orally), Martha C. Gaythwaite, Friedman & Babcock, Portland, for plaintiffs.

Bryan M. Dench (orally), Skelton, Taintor & Abbott, Auburn, Catherine R. Connors, Elizabeth R. Butler (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS and RUDMAN, JJ.

WATHEN, Chief Justice.

Plaintiffs John Jacques and Cecelia Cholewa, who own and reside on property in Auburn, appeal from an order of the Superior Court (Androscoggin County, *Archibald, A.R.J.*) affirming an Auburn Planning Board decision granting a special exception permit and site plan approval for a sludge composting facility. Plaintiffs contend (1) that the Planning Board denied plaintiffs due process by relying on a separate Siting Agreement negotiated by the Auburn City Council with the applicant without notice to plaintiffs and (2) that the approvals violated the Auburn Zoning Ordinance and the Auburn Master Plan. Finding no error, we affirm the judgment.

The Lewiston–Auburn Water Pollution Control Authority (hereinafter "the Authority"), a non-profit, quasi-municipal corporation, applied in February 1992 for a special exception permit and site plan approval for a municipal waste water sludge composting plant to be located on Penley Corner Road in Auburn. The proposed location was in an Agriculture and Resource Protection District under the Zoning Ordinance that permits farms and particular activities compatible with farming and allows other farm-related uses by special exception.

Prior to the Authority's application to the Planning Board, the Auburn City Council amended the Zoning Ordinance to include municipal waste water sludge facilities among the uses allowed by special exception. The City Council also authorized a 20–year Siting Agreement between the City and the Authority detailing the Au-

thority's obligations for developing and operating the composting facility.

The Planning Board, after conducting a series of public hearings in which plaintiffs participated, granted the Authority a special exception permit and site plan approval in April 1992 for the sludge composting plant. Plaintiffs, owners of adjoining property, appealed the Planning Board decision, and named the City of Auburn and the Authority as defendants. The Superior Court affirmed the Planning Board's decision. We review the Planning Board's action directly. *Mayberry v. Town of Old Orchard Beach*, 599 A.2d 1153, 1154 (Me. 1991).

### I.

■ Plaintiffs first argue that the negotiation and execution of the Siting Agreement between the City Council and the Authority, and the incorporation of that agreement in the Planning Board's decision, amounted to an *ex parte* determination of the issues, depriving plaintiffs of due process. Although an agreement arrived at by a legislative body with a prospective applicant for regulatory approval potentially may usurp the responsibilities of the regulating body, we find no proof in the present case that the regulatory process was shortcircuited.

The record before us demonstrates that the Planning Board recognized that it was not bound by the Siting Agreement, that extensive public hearings were held and an ample record developed, and that the Board imposed conditions in addition to those found in the Siting Agreement. The mere fact that the Planning Board included elements of the Siting Agreement in its decision is not itself proof that the Planning Board did not fairly review the application and provide due process. Any bias that resulted from the City Council's prior negotiation of the Siting Agreement was not sufficient on these facts to taint the process which plaintiffs were due. *Cf. Grant's Farm Associates, Inc. v. Town of*

*Kittery*, 554 A.2d 799, 801 n. 1 (Me.1989). Because the record shows that the Planning Board independently reviewed the project, we cannot conclude that incorporating the Siting Agreement in the Planning Board's decision constituted an improper delegation of power.

### II.

■ Plaintiffs next contend that the Authority filed an End–Use Plan that was inadequate to meet the Zoning Ordinance's requirement. The Zoning Ordinance requires the filing of an End–Use Plan as part of the Planning Board process for approval of facilities processing and composting sludge. The Ordinance does not specify the contents or the degree of detail required in the End–Use Plan.

The End–Use Plan filed in the present case states that the Authority will restore the property to "a farm condition" and will remove "many of the facilities." The Plan lists facilities expected to be removed and suggests that the building envelope may be retained for a continuing farm use. The End–Use Plan is brief, but in the absence of detailed standards in the Ordinance we find no abuse of discretion by the Planning Board in accepting it.

### III.

■ Plaintiffs argue that the Planning Board erred by finding that the project would meet the environmental performance standards set by the Zoning Ordinance. Plaintiffs contend that the Board misinterpreted the odor standard to allow higher emissions at lot lines and improperly relied on an independent consultant in the absence of any selection by the applicant of a particular biofilter design. Plaintiffs also argue that the Planning Board applied the incorrect noise standard to the project.

The Zoning Ordinance prohibits a development from generating odor at the lot line at a level detectable by abutters. Auburn Zoning Ordinance art. 5.6(E).[1] The Plan-

---

1. The Auburn Zoning Ordinance provides:
   1. For purposes of this section, the "odor threshold" is defined as the minimum concentration in air of a gas, vapor, or particulate matter than can be detected by the abutters of the property in questions.

ning Board, finding that the facility would not create "a significant or unreasonable impact on surrounding properties, even though some odors may from time to time be detectable at property lines," established a testing and monitoring program to detect odors at dwellings and public roads.

The Zoning Ordinance specifies that the purpose of the environmental performance standards is "to assure that no new development occurs which may have an environmental impact that could be detrimental to the City or property owners or that may have a direct impact to property caused by nuisances directly or indirectly associated with the above environmental issues." Zoning Ordinance art. 5.6(A). From expert testimony on the facility's ability to control odors and performance specifications, the Planning Board reasonably could have concluded that the facility could meet the odor standards without being provided with a final design of the biofilter.

Neither was it improper for the Planning Board to authorize an independent consultant to review the biofilter design and construction as that work progresses and to advise the Planning Board. Contrary to plaintiffs' contention, this does not constitute an unguided delegation of power but utilizes a paid expert to assist the Planning Board in ensuring that the facility will meet specified environmental performance standards when constructed. *Cf. Chandler v. Town of Pittsfield,* 496 A.2d 1058 (Me.1985).

Although plaintiffs correctly observe that the Planning Board's odor testing and monitoring scheme focuses on odors at dwellings and public roads instead of at lot lines, that scheme does not alter the odor standards of the Zoning Ordinance at the lot lines. Those standards continue to apply to the operation of the facility irrespective of the monitoring locations.

The Zoning Ordinance provides separate noise restrictions for residential, general business, and light-industrial uses. It does not, however, specify how to apply those classifications to each of the 12 possible zoning districts. Zoning Ordinance art. 3, 5.6(C). The Planning Board determined that the least restrictive noise level applied to the Agriculture and Resource Protection District, the district in which the sludge composting facility would be built, and that the facility would meet that standard. Among the special exceptions allowed in this district, in addition to sludge composting facilities, are sawmills and rifle, pistol, skeet, and trap shooting ranges. Considering these permitted uses, we do not find that the Board erred in concluding that the least restrictive noise limits applied.

## IV.

Plaintiffs contend that approval of the site plan and special exception permit for the composting facility violated the Auburn Master Plan because the development withdraws land from agricultural use contrary to the Plan's stated purpose for the Agriculture and Resource Protection District. The compatibility of sludge composting facilities with the purposes of the Agriculture and Resource Protection District was determined by the City Council when it amended the Zoning Ordinance. "Whether the use will generally comply with the health, safety and welfare of the public and the essential character of the area is a legislative question." *Cope v. Inhabitants of Town of Brunswick,* 464 A.2d 223, 227 (Me.1983). No error was committed by the Planning Board.

The entry is:

Judgment affirmed.

All concurring.

2. No development in any zone may generate any odor that reaches the odor threshold, measured at the lot line of the enterprise generating the odor.

Auburn Zoning Ordinance art. 5.6(E).