STATE OF MAINE                                    SUPERIOR COURT
                                                    CIVIL ACTION
YORK, SS.                                          DOCKET NO. AP-09-47
                                                    GAB - yor. 10/5 - 010

J. GEORGE DRISCOLL and
NANCY S. DRISCOLL,

                    Plaintiffs


          v.                                         ORDER


CITY OF SACO,

                    Defendant


## BEFORE THE COURT

Plaintiffs J. George and Nancy S. Driscoll appeal the City of Saco's Zoning Board of Appeals' decision to deny their application for a building permit. The issue on appeal is whether the petitioners' lots should be treated as merged under the City of Saco's zoning ordinance. Following hearing, the appeal will be Denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' J. George and Nancy S. Driscoll acquired title to two parcels of land in Saco, Maine, on October 4, 1980. One parcel ("Lot #201") contains the Driscolls' home. The other, adjacent parcel ("Lot #202") remains undeveloped. Lot #201 and Lot #202 are legally nonconforming with respect to the City of Saco's Zoning Ordinance ("Ordinance").[1] (R. at 11-12.) In 1981, the Driscolls conveyed Lot #201 and #202 to

---

[1]     The deed described the Lot #201 as "A certain lot or parcel of land, together with the buildings thereon, located at Kinney Shores in the City of Saco, Maine . . . . Being fifty (50) feet on Oceanside Drive; 107 feet more or less joining Lot No. 202; fifty (5) feet on the Ocean and Beach; and 104.3 feet joining Lot No. 200..." (R. at 11.) Lot #202 is described by reference to a Plan of Land, as "a certain adjacent lot or parcel of land, together with the building thereon, situated at said Kinney Shores and being Lot number 202 as shown on a Plan of Land of M. H. Kinney, Saco, Maine, called Kinney Shores No. 2, April 1914, Roland Libbey, C.E. and filed in the York County Registry of Deeds . . . ." (*Id.*) The deed also contains restrictions on buildings erected on Lot #202. (*Id.*)

Celeste Murray who immediately conveyed the property back to the Driscolls as joint tenants, apparently for estate planning purpose. (R. at 21-24.) In 1986, George Driscoll conveyed Lot #202 to Nancy Driscoll. (R. at 29-30.)

In August 2009, the Driscolls filed an application for a permit to build on Lot #202 with the City of Saco's Code Enforcement Officer ("CEO"). The CEO denied the Driscolls' application by opinion letter dated August 27, 2009. (R. at 58-61.) In the letter, the CEO determined that Lot #202 had merged with Lot #201 under Section 502-1 of the Ordinance when the lots were held in common ownership between 1980 and 1986.[2] (R. at 60.)

The Driscolls appealed to Saco's Zoning Board of Appeals ("ZBA").[3] After two hearings, the ZBA denied the Driscolls' administrative appeal on the grounds that Lot #201 and Lot #202 merged under Section 502-1 of Saco's Zoning Ordinance, which applies to nonconforming lots. (R. at 268.) The ZBA issued findings of fact on December 11, 2009. (R. at Tab 7.) The Driscolls initiated this appeal by Complaint on November 25, 2009.

## DISCUSSION

### I.    Standard of Review

When reviewing an administrative decision pursuant to Rule 80B, the court examines the ZBA's decision for errors of law, abuse of discretion or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d

---

[2]    The CEO also found that Lot #202 was located within the city's Resource Protection Zone and was therefore unbuildable. The Driscolls did not appeal the CEO's decision regarding the Resource Protection Zone to the ZBA. The Driscolls chose to undertake such an assessment, which would require expensive and detailed survey work, once the issue of buildability was addressed. (Pls.' Br. at 5.) The Driscolls assert that the city's Resource Protection Zoning has been changed in June of 2009 such that it no longer affects the buildability of the lot. (Pls.' Br. at 5, n. 2.)

[3]    In their appeal to the ZBA, the Driscolls also requested a variance, which was denied. (Pls.' Br. at 5.) In the instant appeal, the Driscolls do not challenge the ZBA's decision not to grant a variance because they contend that the variances are not necessary to render the lot buildable. (*Id.*)

2

1168. The burden of persuasion in an action challenging an administrative decision rests on the party seeking to overturn its decision. *See Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13, 760 A.2d 257, 260.

Questions of law are reviewed *de novo. Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 7, 946 A.2d 408, 410. If the plain meaning of the ordinance is clear, the court will not look beyond the words themselves. *Id.* ¶¶ 7, 9, 946 A.2d at 411. In construing the language of an ordinance, the court considers the objectives sought to be obtained by the ordinance in the context of the structure of the ordinance as a whole. *Kane v. Comm'r of the Dep't of Health & Human Servs.*, 2008 ME 185, ¶ 12, 960 A.2d 1196, 1200; *see also Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3, 836 A.2d 1285, 1286.

When reviewing questions of fact, the court employs the "substantial evidence" standard. *Gulick v. Bd. of Envtl. Protection*, 452 A.2d 1202, 1207-08 (Me. 1982). Under this standard, the issue before the reviewing court "is not whether it would have reached the same conclusion as the [administrative tribunal], 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (*quoting CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261).

## II.     Interpretation of the Ordinance

At the heart of the Driscolls' argument is the meaning of Section 502 of the Ordinance entitled "Nonconforming Lots." Specifically, the parties dispute whether the merger provision under this section applies only to contiguous vacant lots. Section 502-1 of the Ordinance, as amended in 1985, states:

> 502-1 <u>Vacant Lots</u>
> 1)  A non conforming lot of record may be built upon provided that such lot shall be in separate ownership and not contiguous with **any other lot** in the same ownership, except as provided in paragraph 502-1(2) below.

3

2) If two or more vacant, contiguous lots or parcels are in single or joint ownership of record at the time of adoption or amendment of this Ordinance, if these lots do not individually meet the dimensional requirements of this Ordinance or subsequent amendment, the lots shall be combined to the extent where the contiguous lots front onto different streets or where the lots were legally created and recorded as part of an approved subdivision after March 22, 1971, the date of adoption of Saco's subdivision standards.

(R. at 272-273.) (emphasis added) Stated differently, whether merger applies or a nonconforming parcel is buildable depends on its relationship to an adjacent parcel.[4]

The Driscolls first argue that the ZBA's decision is invalid because it bears no relation to health, safety, morals, or general welfare. (Pls.' Br. at 7-8.) "[R]estrictions in a zoning ordinance must bear a substantial relation to public health, safety, morals or general welfare to be valid." *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 (Me. 1980) (internal citations omitted). However, "[m]inimum area, width and frontage requirements are generally valid if reasonable." *Id.* The Driscolls base their argument on the mere allegation that Lot #202 is one of the only undeveloped lots remaining in the area. Absent additional facts, the court cannot say that the Ordinance's restrictions are unreasonable. Moreover, as the defendants contend, the City has a legitimate interest in phasing out nonconforming uses. (Def.'s Br. at 11.) *See Farley v. Town of Lyman*, 557 A.2d 197, 201 (Me. 1989) (purpose of zoning ordinances is to phase out nonconforming lots over time).

The Driscolls second argument is that even if the Ordinance is valid on its face, the interpretation of the merger clause as applied to their lots is not. They contend that the ZBA misinterpreted the meaning of "any other lot" in Section 502-1(1) of the ordinance, and that an improved lot cannot be merged with an unimproved lot under

---

[4] The parties do not contend that an exception in Section 502-1(2) applies. It is clear that if the parcels were held in common ownership, but have frontage on different streets or the other lot was approved as part of a subdivision, there is no merger.

4

the Ordinance. Under the Driscolls' interpretation, "any other lot" in Section 502-1(1) is ambiguous and should be read as "any other *vacant* lot."

In *Power v. Shapleigh*, 606 A.2d 1048 (Me. 1992) the Law Court refused to interpret the language "any other lot" in the applicable zoning ordinance as "any vacant lot." *Id.* at 1050. The *Power* Court interpreted the town ordinance, which stated:

> 1.4.5 Non-Conforming Lots of Record
>
> a. Vacant Lots: A non-conforming lot of record may be built upon provided that such lot shall be in separate ownership and not contiguous with any other lot in the same ownership, and that all provisions of the Ordinance except lot size and frontage can be met. Variance of yard or other requirements not involving area or frontage shall be obtained only by action of the Board of Appeals.
> b. Built Lots: . . .
> c. Contiguous Built Lots: . . .
> d. Contiguous Vacant Lots: If two or more vacant, contiguous lots or parcels are in single or joint ownership of record at the time of adoption or amendment of this Ordinance..., if these lots do not individually meet the dimensional requirements of this Ordinance or subsequent amendment, the lots shall be combined to the extent necessary to meet the dimensional standards, except in situations where the contiguous lots front onto different streets, or except where rights have vested (as described below).
> e. Vested Rights: . . .

*Id.* The Court found that the ordinance unambiguously distinguished between "built" and "vacant" lots when the distinction was intended. *Id.* The ordinance's failure to use a modifier in the merger provision unambiguously indicated "[t]hat 'any other lot' must refer to either built or unbuilt lots . . . ." *Id.* This comported with the plain meaning "of the work 'any,'" meaning "'some, no matter . . . what kind." *Id.* (*quoting Webster's New World Dictionary*, 62 (1976)).

The zoning ordinance in *Power* resembles the Ordinance in this case.[5] Though the Ordinance does not have a separate provision entitled "Contiguous Vacant Lots,"

---

[5] Contrary to the Driscolls' claims, the Ordinance is not ambiguous. The Driscolls rely on *LaPointe*, 419 A.2d at 1016, where the Law Court held that the merger provision in Section 510-3, the predecessor to

Section 502-1(2) contains nearly identical language. Here, as in *Power*, the City "used the modifiers 'built' and 'vacant' where such modification was intended." *Id.* The City's failure to use these modifiers in its own merger provision, together with the plain meaning of the words "any other lot," show that a vacant lot may merge with a built lot if the lots are nonconforming. Because the Driscolls' lots are nonconforming, the ZBA properly found that they merged and this court should affirm the ZBA's decision.

## III. Common Ownership

The Driscolls next claim that the deed, including the deed restrictions on Lot #202, make it clear that the lots are separate. Generally, there is "no authority for the proposition 'that the use of the scriveners device of describing multiple contiguous lots by their external perimeter destroys the independent standing of the constituent parts.'" *Logan v. City of Biddeford*, 2001 ME 84, ¶ 8, 772 A.2d 1183, 1185-1186. (*quoting Bailey v. City of Portland*, 1998 ME 54, ¶ 8, 707 A.2d 391, 393. A description in a deed will "not destroy the separate character of the lots that existed at the time of the conveyance." *Logan*, 2001 ME 84, ¶ 8, 772 A.2d at 1186. Instead, "the zoning ordinance must be applied to the facts of the case to determine if the ordinance requires merger of the lots." *Id.* ¶ 9, 772 A.2d at 1186; *see also Farley v. Town of Lyman*, 557 A.2d 197, 198 (Me. 1989) (holding that under the town zoning ordinance, merger was automatic despite the plaintiff's intentions or the language in the deed).

In this case, the City has never used the deed as a reason to deny the Driscolls a building permit. In fact, the ZBA's decision was based on an interpretation of the

---

Section 502-1, applied only to unimproved lots. The Law Court relied on the restrictions for merged lots, holding that the city did not intend "to prevent the separate use or the separate conveyance of contiguous non-conforming lots, previously improved separately, simply because they happen to exist in common ownership." *Id.* After the *LaPointe* decision, the City amended the Ordinance and adopted the provisions as they now read. The term "any other lot" unambiguously refers to built or unbuilt lots. *See also Power*, 606 A.2d at 1050. ("That 'any other lot' must refer to either built or unbuilt lots becomes clear... from the definition of the word 'any' to mean 'some, no matter... what kind...'") (*quoting Webster's New World Dictionary*, 62 (1976)).

Ordinance. (*See* Decision of Code Enforcement Officer Lambert, R. at 60-61; *see also* ZBA's Findings of Fact, R. at 268 (upholding the CEO "based upon merger of the vacant lot into the developed lot pursuant to its understanding of Section 50[2-1](1) of the Saco Zoning Ordinance").) Thus, the ZBA's decision followed the holding in *Logan* in that it did not rely on the deed, but the Ordinance. Therefore, it appears as though this claim is simply a challenge to the ZBA's interpretation of the Ordinance as above.

## IV.    Equitable Estoppel

Finally, in their reply brief, the Driscolls claim that the City is equitably estopped from denying their building permit. The Driscolls assert that, in reliance on the DEP and CEO's assessments of Lot #202, they have invested time and money into making the lot buildable and obtaining a septic design.[6] "For an equitable estoppel claim to succeed, [the Driscolls] must establish that (1) the statements or conduct of the CEO induced [them] to act; (2) the reliance was detrimental; and (3) [their] reliance was reasonable." *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 15, 868 A.2d 230, 234. However, "equitable estoppel 'can be asserted against a municipality only as a defense and cannot be used as a weapon of assault.'" *Id.* ¶ 16, 868 A.2d at 234 (*quoting Buker v. Town of Sweden*, 644 A.2d 1042, 1044 (Me. 1994) (quotation mark omitted)). Even if available, equitable estoppel would only apply if the City brought an enforcement action against the Driscolls. Here, the City only denied the Driscolls' request for a building permit. Therefore, this court finds that equitable estoppel does not apply in this case.

---

[6]    From the early- to mid-1980s to the early 2000s, the Driscolls worked with the Department of Environmental Protection ("DEP") to make Lot #202 buildable under the DEP regulations. (Pls.' Br. at 3.) In 1992, the DEP determined that Lot #202 was unbuildable because of the sea wall. (*Id.* at 4.) As a result, the Driscolls requested that the City tax Lot #202 as unbuildable. (*Id.* at 4, n. 1.) After continuing to work with the DEP, in 2003-2004 the lot was determined to be buildable. (*Id.* at 4.) However, the CEO determined that the Driscolls would not be able to connect to the sewer system. (*Id.*) As a result, the Driscolls obtained a septic system design, which they submitted to the City in 2006. (*Id.*) The only remaining impediment to developing Lot #202 is a building permit.

7

# CONCLUSION

The Court Affirms the decision of the City of Saco Zoning Board of Appeals.

Dated: __10/5/10__

G. Arthur Brennan
Justice, Superior Court

ATTORNEYS FOR PLAINTIFFS:
WILLIAM S KANY
KATHLEEN KONOLY
SMITH ELLIOTT SMITH & GARMEY
PO BOX 1179
SACO ME   04072

ATTORNEY FOR DEFENDANT:
TIMOTHY MURPHY
PRESCOTT JAMIESON NELSON & MURPHY
PO BOX 1190
SACO ME   04072-1190

8